IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PRISCILLA BENAVIDES,

       Plaintiff,

                                        Civil No. 12-919 MV/ACT

       v.

STATE OF NEW MEXICO,
Department of Transportation,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment [Doc. 53]. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well-taken in part and will be granted in part and denied in part.

## BACKGROUND

Plaintiff has been employed with the New Mexico Department of Transportation ("DOT") as a civil engineer since August 1997. In April 2010, her supervisor, Tony Abbo, offered her the opportunity to temporarily fill the position of Acting Traffic Engineer. Abbo offered her a temporary salary increase ("TSI") of 10 percent, which would have resulted in a salary of $38.06. The DOT Compensation Policy in effect at the time provided that:

> With the approval of the State Personnel Office Director, an employee may be granted a temporary salary increase of up to fifteen percent (15%) for a period not to exceed one year from the effective date of the salary increase, for temporarily accepting and consistently performing additional duties which are characteristic of a job requiring greater responsibility/accountability and/or a higher valued job.

Doc. 59-13 § 4.02.   In an email message dated April 26, 2010, Plaintiff memorialized her request that she be granted a 15 percent TSI.   Doc. 59-7.   Abbo sent an email message in response a few minutes later, stating:   "Since I got the verbal approval to advertise the position, I will assume the DTE duties until I can hire someone into the position.   I will discuss my decision with you when I get back from ITS weekly meeting."   *Id.*

Thereafter, Plaintiff applied for the permanent position of Traffic Engineer.   The job description for the Traffic Engineer position provided: "Twelve (12) years experience in Traffic/Transportation Engineering and Roadway Engineering to include three (3) years Supervisory experience is required for this position."   Doc. 59-18.   Applicants were required to apply by May 24, 2011.   *Id.*

Defendant did not select Plaintiff for the position, but rather hired an applicant from outside DOT, Antonio Jaramillo.   Nothing in Jaramillo's application indicated that he had supervisory experience; rather, Abbo "made an assumption" that because he had managed the sort of projects listed on his application, he "would have had people under him."   Doc. 59-16.   Jaramillo's application indicated that he had been a staff engineer from "2000 to present," and thus he had less than 12 years of experience at the time he submitted his application.   Doc. 59-20.   Jaramillo was selected on June 13, 2011, at a recommended salary of $42.95.   Doc. 59-27.

Plaintiff met all of the qualifications for the position of Traffic Engineer.   Doc. 59 ¶ 50.   Specifically, she had 14 years of experience and more than three years of supervisory experience.   Plaintiff had the same level of education as Jaramillo, but had more knowledge of District 3 operations, and more engineering experience than Jaramillo.   *Id.* ¶¶ 50, 55.

According to Plaintiff, in the fall of 2009 when she returned with her newborn baby from a nine-month fellowship in Washington, D.C., she "was harassed endlessly by Tony Abbo in

determining who the father of [her] son was." Doc. 53-1 at 9.  Plaintiff states that she asked Abbo twice to stop making comments about her baby, and that, "once it was clear" that she "was no longer going to tolerate this behavior things changed for [her] on a day to day basis." *Id.* Plaintiff described how things changed for her as follows:  no engineering coordinator was assigned to her as promised; Abbo excluded her from project meetings; Abbo dissolved the district survey unit under her management and turned the crew into a design crew; Abbo took away the opportunity for her to serve as Acting Traffic Engineer when she requested a 15% TSI; Abbo subjected her to lengthy and contentious interim reviews to which others were not subjected; Tammy Haas excluded her from an invitation list to a managers' meeting; DOT offered the Traffic Engineer position to Jaramillo instead of Plaintiff, after which Abbo avoided conversations and contact with her; an HR employee treated her rudely; Abbo falsely blamed Plaintiff in an article for a "million dollar failure"; Abbo pulled her nomination for employee of the month; Abbo yelled and belittled her in front of her peers at a meeting; Abbo denied Plaintiff's requests to attend trainings; Abbo removed Plaintiff from certain meetings; Abbo questioned Plaintiff about requesting a leave slip; Abbo required Plaintiff to meet with him every Friday afternoon; Haas told Plaintiff that she was not a team player; Abbo denied overtime requests for Plaintiff's staff; Plaintiff's transfer was not properly handled, and was not properly investigated; Abbo tried to have Plaintiff removed from a committee; Haas asked questions about Plaintiff's personal relationships; and Abbo and Hass told the DOT IT Support that Plaintiff had reported an employee for watching pornography. *Id.* at 9-16.

   On June 30, 2011, Plaintiff sent a written complaint to Sarah Garcia-Moehn in Human Resources, copied, *inter alia*, to Abbo and Eugene Moser, State Personnel Director, making a "formal complaint" regarding the selection of Jaramillo for the position of Traffic Engineer.  Doc.

59-5.  Moser did not respond to the complaint.  Additionally, on July 6, 2012, Plaintiff sent a letter to Moser regarding NMDOT Grievance Response Dated June 8, 2012, appealing her transfer and the way in which her transfer was implemented.  Doc. 11-1.  Moser sent Plaintiff two letters in which he advised that the request to appeal her transfer was denied, noting that:  DOT had not violated the Administrative Code; Plaintiff had failed to comply with the requirements of the Administrative Code; and Plaintiff had not exhausted the internal complaint process.  Doc. 65-1.

As a result of DOT's alleged misconduct, on August 26, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Commission ("EEOC"), alleging violations of Title VII and the Equal Pay Act.  *Id.* ¶ 4.  On September 13, 2011, Plaintiff filed an amended charge of discrimination, claiming that she had been retaliated against in violation of Title VII and the Equal Pay Act.  *Id.*  On June 1, 2012, the EEOC issued to Plaintiff a Notice of Right to Sue.  *Id.* ¶ 5.

On August 29, 2012, Plaintiff filed her Complaint for Damages from Violations of Title VII, the Equal Pay Act, and New Mexico Common Law.  Doc. 1.  The Complaint alleges claims of gender discrimination, hostile work environment, and retaliation, in violation of Title VII (Counts I to III), violation of the Equal Pay Act (Count IV), and breach of an implied contract of employment (Count V).

On October 22, 2012, Defendant filed a motion for partial dismissal.  Doc. 9.  The Court denied the motion in a Memorandum Opinion and Order entered on August 28, 2013.  Doc. 51.  On October 10, 2013, Defendant filed the instant motion for summary judgment on all counts of the Complaint.  Doc. 53.  Plaintiff filed a response in opposition on November 8, 2013, arguing that summary judgment should not be entered on Plaintiff's gender discrimination, hostile work environment, and breach of implied contract claims; Plaintiff does not oppose summary judgment

on her retaliation and Equal Pay Act claims.  Doc. 65.  Defendant filed a reply on December 5, 2013.  Doc. 65.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).  The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).  The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc*., 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (citation omitted).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).   If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.  *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

**DISCUSSION**

I.    Plaintiff's Gender Discrimination Claim

In Count I of the Complaint, Plaintiff alleges that Defendant discriminated against her on the basis of her gender when it failed to select her for the position of Traffic Engineer.   "Title VII of the Civil Rights Act of 1964 prohibits, among other things, unlawful employment discrimination on the basis of an individual's sex."   *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).   To prevail on a Title VII claim, a plaintiff "must establish intentional discrimination through either direct or indirect evidence."   *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).   In the absence of direct evidence of discrimination, "the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework is used to indirectly prove intentional discrimination."   *Id.*   Under the *McDonnell Douglas* test, "if a plaintiff can make out a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action."   *Id.*   "If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext."   *Id.*

To state a prima facie case of discrimination, "a plaintiff must demonstrate by a preponderance of the evidence that (1) she belongs to a protected class; (2) she applied for an

6

available position for which she was qualified; [and] (3) she was rejected under circumstances which give rise to an inference of unlawful discrimination." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). The burden in articulating a prima facie case "is slight." *Orr*, 417 F.3d at 1149. "At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an *inference of discrimination*, not dispel the non-discriminatory reasons subsequently proffered by the defendant." *Id.* (citation omitted; emphasis in original). As the Tenth Circuit stated and then repeated in *Orr*, "[a]t the prima facie stage, the plaintiff's burden is not onerous." *Id.* at 1149, 1152.

    Here, Defendant argues that, because Plaintiff admitted to having no direct evidence that gender was the reason for Defendant's failure to promote her, she is unable to meet her burden of proof on her gender discrimination claim and, for this reason, summary judgment is warranted. Specifically, Defendant points to Plaintiff's deposition testimony where, when asked whether she has "any evidence that gender is anything other than coincidental" to the fact that Jaramillo was selected to be Traffic Engineer, she responded, "No, sir." Doc. 53-1. According to Defendant, even if Plaintiff has made out a prima facie case, summary judgment is warranted because Plaintiff's "admission forecloses her ability to meet her ultimate, never shifting burden of proof of discrimination." Doc. 65 at 11.

    As an initial matter, the Court does not read Plaintiff's testimony as an admission that Defendant did not discriminate against her on the basis of gender. Plaintiff was not asked, and thus did not opine, as to whether gender was the reason why she was not selected for Traffic Engineer. Rather, she stated that she had no evidence that Jaramillo was selected solely because he is male. Further, given that Plaintiff is not a lawyer, it is reasonable to assume that she understood the term "evidence" to be limited to direct evidence, rather than also to encompass

circumstantial evidence. Whether Plaintiff has direct evidence of the reason for Jaramillo's selection, which is not the precise issue before the Court, is far from dispositive of Plaintiff's discrimination claim.

More importantly, Defendant's argument misapprehends the analysis relevant to a Title VII gender discrimination claim. A plaintiff alleging discrimination need not come forward, in the first instance, with direct evidence of gender discrimination. To the contrary, even in the absence of direct evidence of discrimination, a plaintiff may make out a prima case of discrimination by raising *an inference* of discrimination. The Tenth Circuit has repeatedly held that the plaintiff's burden at the prima facie stage is "slight" and "not onerous." The Court finds that Plaintiff has met her burden.

The undisputed facts establish that Plaintiff, who is a woman and thus belongs to a protected class, applied for the position of Traffic Engineer, for which she was qualified. She was rejected, and the position was offered to a male applicant, who was less qualified than Plaintiff for the position. In particular, Jaramillo had less knowledge of District 3 operations and less engineering experience than Plaintiff. Unlike Plaintiff, he did not have the requisite years of experience or any supervisory experience, and thus did not meet all of the posted qualifications for the position.

Because Plaintiff thus met her prima facie burden, the burden shifted to Defendant to proffer a legitimate non-discriminatory purpose for declining to offer Plaintiff the Traffic Engineer position. Defendant utterly failed to do so. Despite this failure, Defendant argues that summary judgment in its favor is warranted, as Plaintiff's evidence does not establish "pretext." Plaintiff, however, is not called upon to establish pretext unless and until Defendant articulates a legitimate non-discriminatory reason for its promotion decision. *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312,

1316 (10th Cir. 1992) ("Once the defendant has set forth a facially nondiscriminatory reason for the [adverse employment action], the plaintiff then assumes the normal burden of any plaintiff to prove her or her case at trial."). Indeed, it would be nonsensical to require Plaintiff to prove that some hypothetical, as yet undisclosed justification for not selecting Plaintiff for the Traffic Engineer position was pretextual. Defendant's framing of the analysis improperly "put[s] the cart before the horse." *Orr*, 417 F.3d at 1151-52. The Tenth Circuit has specifically "warned against this conflation of the issues, which results in an elevated burden on plaintiffs in Title VII lawsuits, and makes "the playing field unlevel for [the female Plaintiff] when her burden was supposed to be not onerous."[1]  *Id.* at 1152 (citation omitted).

    Based on the record, it appears that Defendant easily could have articulated a justifiable reason for its apparent gender-based decision. The fact remains, however, that it chose not to articulate any reason at all. Because Defendant thus did not meet its burden, the burden has not shifted back to Plaintiff to establish pretext. Under these circumstances, it would be improper for the Court to grant summary judgment in favor of Defendant on Plaintiff's gender discrimination claim.

II.    <u>Plaintiff's Hostile Work Environment Claim</u>

    In Count II of the Complaint, Plaintiff alleges that she was subjected to workplace hostility, isolation, crude comments, and physically threatening behavior that amounted to a hostile work

---

[1] In each case cited by Defendant, the court addressed whether the plaintiff's evidence was sufficient to establish pretext only after finding that the defendant had articulated a legitimate non-discriminatory reason for its adverse employment action. *See, e.g., Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303 (10th Cir. 2005); *Murray v. Cars Collision Ctr. of Colo,* LLC, No. Civ. A04CV01456CBSEWN, 2006 WL 456266 (D. Colo. Feb. 23, 2006). Accordingly, none of these cases supports Defendant's position that a plaintiff's failure to demonstrate pretext, where her prima facie burden has been met and a defendant has proffered no legitimate non-discriminatory reason for its decision, is a valid basis for granting the defendant summary judgment.

environment. Title VII "prohibits subjecting an employee to a hostile work environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). "To establish that a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Id.* "[C]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Id.* at 1187. In judging the objective severity of the harassment, the Court must "look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 io(2002) (citations omitted). Importantly, a "plaintiff must produce evidence that she was the object of harassment because of gender." *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998).

Here, in support of her hostile work environment claim, Plaintiff states in her response brief that, in the fall of 2009, when she returned with her newborn baby from a nine-month fellowship in Washington, D.C. with her newborn son, Abbo harassed her "endlessly" about the identity of the father of her baby. Plaintiff further states that she asked Abbo twice to stop making comments about her baby, and that, as a result of asking him to stop, things changed for her on a day-to-day basis. Plaintiff goes on to list 28 ways in which things changed negatively for her over the next several years.

Although not overtly sexual in nature, Abbo's alleged comments to Plaintiff regarding the identity of her son's father arguably were gender-motivated. The remainder of the conduct outlined by Plaintiff, however, cannot be so construed. There is simply nothing in Plaintiff's description of the conduct to which she was subjected to suggest that she was the object of harassment because of her gender. All of the incidents cited by Plaintiff seem motivated by gender-neutral personality conflicts and managerial decisions with which Plaintiff did not agree, rather than by Plaintiff's gender. "If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." *Penry*, 155 F.3d at 1263.

Nor does the Court see any relationship between Abbo's comments regarding the paternity of Plaintiff's baby and the conduct that allegedly followed her request that he stop making those comments. Accordingly, even considering the complete history of acts as described by Plaintiff, the Court can discern no "actionable hostile work environment practice" continuing past Abbo's original comments. *Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005).

The Court thus is left to determine the viability of Plaintiff's hostile work environment claim based only on Abbo's alleged comments regarding the paternity of her baby. The evidence of these comments, if proven, would be insufficient as a matter of law to establish that a hostile work environment existed. Although stating that Abbo harassed her "endlessly" about her baby's father, Plaintiff provides no evidence that Abbo's comments were frequent or severe, or that they were accompanied by any physical threats or humiliation. Nor does Plaintiff explain how the comments unreasonably interfered with her work performance. Plaintiff thus has not established that Abbo's comments about the identity of her child's father were "sufficiently severe or

11

pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Penry*, 155 F.3d at 1263 (citation omitted). Accordingly, summary judgment for Defendant is warranted on Plaintiff's hostile work environment claim.

III.   Plaintiff's Breach of Implied Contract Claim

In Count V of the Complaint, Plaintiff alleges that the policies and procedures published and enforced by Defendant constitute an implied contract of employment between the parties, and that Defendant breached that contract by failing to abide by, implement, and enforce its policies and procedures. Defendant argues, and Plaintiff does not dispute, that she was a non-exempt employee subject to the State Personnel Act and the State Personnel Board rules and procedures governing adverse employment actions. "The State Personnel Act requires [an aggrieved] employee to raise breach of contract issues before the State Personnel Board ("SPB")." *Martinez v. N.M. Dep't of Health*, No. CIV 04-1326, 2006 WL 4079690, *7 (Dec. 4, 2006). A breach of implied contract claim brought by a state employee "necessarily involves the State Personnel Act and attendant rules, regulations and personnel policies, and the essence for those claims can be adjudicated in proceedings before the SPB." *Id.* (quoting *Barreras v. N.M. Corrs. Dep't*, 62 P.3d 770, 774 (N.M. Ct. App. 2003)). Accordingly, "the employee's remedies [for breach of implied contract] are limited to those set forth in the State Personnel Act." *Id.* (quoting *Barreras*, 62 P.2d at 772). "The State Personnel Act provides the exclusive remedy for [an employee's] breach-of-contract claims based on that same Act." *Id.* (quoting *Barreras*, 62 P.3d at 775). "Where a statue offers exclusive remedies, a plaintiff must exhaust those remedies before proceeding to the district court for relief." *Id.* It is only after an employee appeals to the SPB that she "may appeal the decision to the district court." NMSA 1978, § 10-9-18(G).

Plaintiff does not dispute that exhaustion of remedies is generally required, but rather argues that she was not required to exhaust her administrative remedies here, because it would have been futile. Plaintiff is correct that exhaustion of administrative remedies is not required "where it would be futile or fail to provide adequate relief." *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993). The Court, however, does not find that Plaintiff has established that addressing her claims to the State Personnel Board before filing her instant action would have been futile.

First, "[a]dministrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reforms." *Id.*. Plaintiff's allegations address no such systemic or system-wide failures. Further, Plaintiff's own evidence does not bear out her claim that the SPB was unresponsive to any breach of contract claims she raised. Specifically, Plaintiff points to her June 30, 2011 complaint regarding the selection of Jaramillo as Traffic Engineer. That complaint, however, was addressed to Garcia-Moehn in DOT Human Resources; Plaintiff merely copied Moser, the State Personnel Director, on the complaint. Further, Plaintiff did not in her complaint request review by the SPB of an alleged breach of a term of her employment. It thus does not appear that a response from Moser was warranted or even expected. Plaintiff also cites to her July 6, 2012 letter to Moser regarding a grievance she filed appealing her transfer and the way her transfer was implemented. While Plaintiff claims that she received no response from the SPB related to her concerns, Moser in fact sent Plaintiff two letters in which he advised that the request to appeal her transfer was denied, in part because of Plaintiff's own failure to comply with the applicable rules and exhaust her internal complaint process. Plaintiff cannot be heard to argue that it would have been futile to pursue and exhaust administrative remedies simply because those remedies were unlikely to result in a resolution favorable to her.

13

Accordingly, Plaintiff has failed to establish either that she exhausted the exclusive administrative remedies on her breach of implied contract claims, or that it would have been futile to exhaust those remedies.   Summary judgment for Defendant on Plaintiff's implied breach of contract claims thus is warranted.

IV.     Plaintiff's Remaining Claims

In the Complaint, Plaintiff alleged a claim of retaliation in violation of Title VII (Count III) and a claim of violations of the Equal Pay Act (Count IV).   Defendant moved for summary judgment on those counts.   Plaintiff, however, did not respond in opposition to Defendant's motion as to her retaliation and Equal Pay Act claims, and thus appear to have abandoned those claims.   After its own evaluation of the merits of those claims, the Court agrees that, based on the undisputed facts, Plaintiff's retaliation and Equal Pay Act claims fail as a matter of law. Accordingly, summary judgment on those additional counts is warranted.

## CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. 53] is GRANTED IN PART AND DENIED IN PART, as follows: Counts II through V of the Complaint are hereby dismissed; Plaintiff's claim for violation of Title VII based on gender discrimination, set forth in Count I, remains viable.

DATED this 29th day of September, 2014.

_____
MARTHA VÁZQUEZ
United States District Judge